ITTNER *et al.*, *Appellants*, v. ST. LOUIS EXPOSITION AND MUSIC HALL ASSOCIATION *et al.*

1. **Account.** An account is a detailed statement of the mutual demands in the nature of a debt and credit between parties, arising out of contract or some fiduciary relation.

2. **Contract: PRACTICE: REFERENCE.** An action for the contract price of work, for extra work and for the enforcement of a mechanic's lien, under a contract for furnishing brick and doing the brick-work on a building is a proper one for reference.

3. —— : —— : ——. And the case is none the less a proper one for reference, because one of the items of credit set up in the answer was, in effect, a counter-claim for damages for alleged inferior materials and workmanship in parts of the structure.

4. —— : CONSTRUCTION : INNER WALLS. Certain inner walls of a building, which extend above the roof and are exposed to the weather but not to view, are not exterior walls within the meaning of a building contract, the specifications of which provide that all exterior walls shall be faced with selected dark red brick, but, taken as a whole, confine such brick-work to walls exposed to view, and which specifically designate all exterior walls, but nowhere mention the walls in question as such, but mention them generally as inner walls.

*Appeal from St. Louis City Circuit Court.*—HON. A. M. THAYER, Judge.

REVERSED AND REMANDED.

*Hitchcock, Madill & Finkelnburg* for appellants.

(1). The compulsory reference of all the issues in this case to a referee against the objection of plaintiffs was error, and deprived plaintiffs of the right to a trial by court or jury of issues which could not legally be tried in any other way except by consent of parties. (2) This was a mechanic's lien suit. Plaintiffs' petition, while involving a demand for extra work, divided into many items, did not involve a long account in the legal sense of the word, so as to justify a reference. There is a distinction between an account and a mere bill of particulars. *Thomas v. Reab*, 6 Wend. 503; *Van Rensalear v. Jewett*, 6 Hill, 373; *Silsmer v. Redfield*, 19 Wend. 21; *Brick v. Republic Ins. Co.*, 2 N. Y. Sup. Ct. 550; *McCullough v. Brodie*, 13 How. Pr. 346; *Thornton v. Life Ins. Co.*, 7 Mo. App. 544; *Freeman v. Ins. Co.*, 13 Abb. Pr. 124; *Swift v. Wells*, 2 How. Pr. 79; *Tracy v. Stearns*, 61 How. Pr. 265; *Sharp v. Mayor of New York*, 9 Abb. Pr. 426; *McMartin v. Bingham*, 27 Iowa, 234. (3) Defendant's answer sets up a counter-claim

Ittner v. St. Louis Exposition Ass'n.

for alleged defective material and workmanship, and claims damages in the gross sum of $4,160, on which plaintiffs took issue by way of general denial. The issue was one, both in substance and form, on which plaintiffs were entitled to a trial by jury. Cases *supra*, and see *Townsend v. Hendricks*, 40 How. Pr. 143 ; *Evans v. Kalbfleisch*, 16 Abb. Pr. ( N. S. ) 13 ; *Dewey v. Field*, 13 How. Pr. 437 ; *Wickham v. Frazer*, 13 Hun, 431 ; *Ross v. Mayor of New York*, 32 How. Pr. 164. (4) Even if the court should be of opinion that the bill of particulars might properly have been referred without plaintiffs' consent, still this did not justify the reference of the entire cause including defendant's counter-claim and plaintiffs' lien, and all other issues of fact in this case. The statute expressly provides for a reference of portions of a case. R. S. sec. 3606. All the issues must be referable in character before the court can refer the entire cause. *Evans v. Kalbfleisch*, 16 Abb. Pr. ( N. S. ) 13. (5) If this court should be of opinion that the entire case was one proper for compulsory reference under R. S. section 3606, then the findings of the referee may now be reviewed and corrected on appeal in this court. *Caruth Co. v. Wolter*, 91 Mo. 484, 488. (6) The referee erred in the various particulars set out in the exceptions to his report and in the motion for new trial, and the circuit court erred in overruling said exceptions and said motion. The referee's rulings and findings were not only against the evidence, but were the result of erroneous theories of law and fact, which he adopted as a guide in deciding the case. (7) The referee erred in giving defendant credit on account of an alleged change of material in the walls of certain areas in the interior of the building, and the referee erred in his construction of the written contract, as well as the evidence applicable thereto.

*Boyle, Adams & McKeighan* for respondents.

( 1 ) The action at bar was on account, and involved

the examination of a long account within the meaning of the statute, and was, in the discretion of the court, referable. An account is a detailed statement of the plaintiff's demands in the nature of debt and credit, arising out of contract or some fiduciary capacity. 1 Bouvier, 53, citing 1 Met. Mass. 215; 1 Hempt. Ark. 114; 32 Penn. St. 202. An itemized account is one which states the items which sum up the aggregate of the demand. *State ex rel. v. Smith*, 89 Mo. 408. In determining whether an account is a proper subject for reference it is not so much the number of items as the multiplicity of the issues, that the court regard. *Schmidt v. Rose*, 6 Mo. App. 578. There is no fixed rule by which it can be determined how many items and of what description will be necessary to meet the statutory demands of a long account. *Briscoe v. Kinealy*, 8 Mo. App. 76. A reference is proper although founded on a single contract, where a long account is directly involved in the issue. And the reference does not become erroneous, *ex post facto*, because on the trial admissions may have superseded the examination of the account. *Father Mathew Society v. Fitzwilliam*, '84 Mo. 406; *Board of Supervisors v. Dunning*, 20 Wis. 410. The power conferred by the reference, section 3606, is intended more for the convenience of the court than as conferring a right on the party. *Goodyear v. Brookes*, 4 Rob. 682; s. c. 2 Abb. U. S. 296. Where there are three counts in a petition, and one of the counts is for a single item under a contract, the whole issue may be referred. *Place v. Chesebrough*, 63 N. Y. 315. Where an action for damages was brought against a publishing house for breach of a single contract to furnish their publications to fill the orders which might have been obtained by plaintiff, the plaintiff claiming as damages the difference between the agreed price and the price he was to receive under the orders, it was held to involve

the examination of a long account and as such refera-
ble. *Chambers v. Appleton Co.*, 84 N. Y. 649 ; *Har-
rington v. Bruce*, 84 N. Y. 103. Where the contract
sued on and the counter-claim contained twenty-seven
and fifteen items, the court may of its own motion refer
the case. *Francisco v. Roseland*, 14 Mo. App. 600.
( 2 ) If the appellants' action had been for damages it
might have been referred, if it involved an examination
of a long account, and much more so where, as in this
case, the plaintiffs' action is on account, the defendant
seeking only damages by way of counter-claim on the
main contract out of which the action arose. *Edward-
son v. Garnhart*, 56 Mo. 81 ; *Gregory v. Anet*, 51 J. &
S. (N. Y.) ; *U. S. Rolling Stock Co.*, 67 Wis. 182 ; *Welsh
v. Darragh*, 52 N. Y. 590 ; *Williams v. Allen*, 48 How.
Pr. 357. ( 3 ) The finding of the lower court, that the
action involves the examination of a long account, will
not be reviewed or reversed unless it is palpable that no
such account could be involved. *Welsh v. Darragh*, 52
N. Y. 590. ( 4 ) The report of the referee in all other
respects complained of by appellants was sustained by
evidence in the cause, and the court below did not err in
overruling the exceptions of appellants confirming the
report and entering judgment as recommended. The
rule that the supreme court cannot interfere with a ver-
dict where there is evidence to support it, is applicable
to reports of referees in actions at law. *Caruth Hard-
ware Co. v. Wolter*, 91 Mo. 484. The statute does not
require specific findings by a referee, although in this
case there were specific findings. *Caruth Hardware
Co. v. Wolter*, 91 Mo. 484. ( 5 ) The general objection
of the appellants to the reference of the case was not
sufficient to raise the point that the court below should
have separated the respondent's counter-claim from the
balance of the issues and submitted it to a jury. *Lin-
coln v. Claflin*, 7 Wall. 132 ; *Cooper v. Schlessinger*, 111

U. S. 148 ; *Worthington v. Mason*, 101 U. S. 149 ; *Horn-blower v. Crandall*, 78 Mo. 581 ; *Whitney v. Crandall*, 78 Mo. 593 ; *Nance v. Metcalf*, 19 Mo. App. 183 ; *Fell v. Mining Co.*, 23 Mo. App. 216 ; *Capital Bank v. Arm-strong*, 62 Mo. 539 ; *Lohart v. Buchanan*, 50 Mo. 201 ; *Bauer v. Franklin*, 51 Mo. 205.

BLACK, J.—The plaintiffs were the contractors with the exposition association for furnishing the brick and doing the brick-work upon the exposition building in St. Louis, and for which they were to receive the sum of $112,797. The contract contemplates changes during the progress of the work, and it is provided that additions to, or deductions from the work, as shown by the plans and specifications, shall be made according to the following rates : (1) Strictly hard and red brick laid in pure cement mortar, $13.50 per thousand ; (2) same laid in fresh lime mortar tempered with cement, $12.30 per thousand ; (3) stock brick, $40.00 per thousand ; and (4) selected red brick-work for facing, $25.00 per thousand. This is a suit for the contract price, and for extra work, and for the enforcement of a mechanic's lien, the balance claimed to be due being $16,410.76.

1. The court, on the motion of the defendants and against the objection of the plaintiffs sent the case to a referee for trial, and of this ruling the plaintiffs complain. The account attached to the petition contains over ninety items. The first is the contract price, and the other items are for additional work for which the contract fixed the price, and there are other items for extra work. The answer, in its general scope, denies that the work done and materials furnished were of the kind and quality specified in the contract, and it then sets up and claims various credits because of deductions, and for changes made in the quality of the brick used from that specified in the contract. It denies that there is anything due plaintiffs, and there is filed with it a statement of the account between the plaintiffs and

defendant. It is also alleged that plaintiffs furnished a large number of brick inferior to those required by the specifications, and that they used inferior cement and mortar, and failed to lay the brick in a manner required by the contract, all to the defendants' damage in the sum. of $4,160. This item of damage is carried into and constitutes a part of defendants' statement of the account.

The statute provides that the court may, upon motion of either party, or of its own motion, direct a reference "where the trial of an issue of fact shall require the examination of a long account on either side," etc. Cases are cited which show that actions sounding in tort are not embraced in this and like statutes, though it may become necessary to consider many items of damage ; for it is considered that such items of damage do not constitute an account as the term is used in the statute. But those cases are without application here. An account is a detailed statement of the mutual demands in the nature of a debt and credit between parties, arising out of contract or some fiduciary relation. Bouv. Law Dic. The demands in this case grew out of contract, and there can be no doubt but the account is a long one within the meaning of the statute. It can make no differance that many of the prices are fixed by the same contract. Aside from the work specified in the original contract, the demands for extra work arose from time to time, when the plaintiffs were requested to, and did do such work, and the right to have credits arose when the defendant directed the omissions. The petition could not be well framed save by setting out all of these items ; and on its face, the correctness of the items being disputed by the answer, it shows a proper case for reference. It is obvious that this case could not be tried except by stating a long account, and the statute was designed to facilitate the trial of just such issues.

2.   But it is further argued that the court could not, of right, make the compulsory reference because one of the items of credit set up in the answer was in effect a counter-claim for damages for alleged inferior materials and workmanship in parts of the structure.   In *Welsh v. Darragh*, 52 N. Y. 590, it was held that the complaint determined the character of the action ; that if the action was one properly referable, a reference would not be defeated by an answer which set up fraud and deceit and counter-claim therefor.   So where the action was brought to recover damages for breach of contract and in which action the plaintiff claimed the difference between the price which he agreed to pay for certain publications and the price at which he had procured orders for the disposition of them, it was held that the case was one properly referable under the code of that state, which is like our own statute.   *Chambers v. Appleton*, 84 N. Y. 649.   In the present case the account is directly in issue and constitutes the principal subject of the contest.   The claim for damages is but an incident in the trial, and had this claim been set up by way of a separate counter-claim, it would not have defeated a reference.   The right to send all of the issues in this case to a referee for trial has the support of the cases cited, and the case seems to us to be one within the letter, spirit and reason of the law, and we therefore hold that the court committed no error in ordering the reference.   If the plaintiffs' account stood conceded, as to the work done and materials furnished and the price to be paid, and the defense stood alone on alleged inferiority of materials used and workmanship, another and a different case would be presented.

3.   The referee made these deductions from the contract price :

" Difference on 67,531 brick on exterior corridor walls above roofs changed from selected red face brick to straight hard brick at $12.70................$857 64

" Difference on 42,105 brick on exterior
　music hall walls above roofs changed
　from selected red face brick to straight
　hard brick at $12.50 ................ $534 73"

The question is whether these walls are exterior walls within the meaning of the contract. The building is a large structure, and Music Hall is located in the center surrounded by brick walls which extend to and support the roof, which is independent of the roof over other portions of the building. There are two other inner walls, one on each side of Music Hall, each twenty feet from the walls of Music Hall, and two hundred feet in length, which extend to the top of the building, and the roof of the exposition departments rests on these walls and the outer walls of the entire building. These inner walls form corridors about twenty feet wide and two hundred feet long in the first and second stories, but the roof over the corridors is twenty to thirty feet below the roof of the other portions of the building; thus leaving open spaces, or areas, or as one witness says, they are just like a box with the cover off. The controversy is over that portion of these two interior' walls above the corridor roof.

The specifications provide: "All exterior walls ( except stock brick walls hereinafter specified ) will be faced with selected dark red brick," etc. Again : "The inner walls east and west of Music Hall, forming corridors, will start on top of footings in basement, and to top of main floor will be twenty-two inches thick ; and from there to roof to be eight inches thick." Some of the witnesses say they are exterior walls, because they are exposed to the weather. Other experienced architects deem them inner walls, and the evidence of one of them is clearly to the effect that they must be regarded as inner walls unless otherwise specifically designated. The notion that they are exterior walls because exposed to the weather is a narrow and technical method of arriving at the true meaning of the specifications. We

must look to the plans and specifications as a whole and construe them as a whole. In doing this we see that expensive brick-work is limited to those walls exposed to view. These walls cannot be seen from the streets at all, and but a small portion of one of them from the interior departments. Again we find exterior walls specifically mentioned, as such, in other portions of the specifications, and we do not find that the walls in question are anywhere specifically mentioned as exterior walls. Where they are specifically mentioned, as in the above quotation, they are called inner walls. That they are such up to the corridor roof is conceded by defendant. When the architect said "all exterior walls (except, etc.) will be faced with select red brick," etc., he was taking a comprehensive view of the entire structure, and it is unreasonable to say, in the light of other portions of the specifications, that he included these walls not exposed to view and forming open areas on top of the building. It is difficult to see how the plaintiffs, in making their bid, could have supposed that these walls were to be faced with select dark red brick. We think the fair construction of the specifications, taken as a whole, is, that they were not to be thus faced. The referee has attached too much importance to the parol evidence before him and not enough to the specifications themselves. These two items should not be entered as credits in favor of defendant. In other words they should be added to the $4,383.27 reported by the referee as balance due the plaintiffs. We do not see that there are any errors in the other finding of the referee of which complaint is made, and they will not be pursued in detail.

The judgment is reversed and the cause remanded with directions to the trial court to enter up a judgment for the plaintiffs, including therein the two items before mentioned. BARCLAY, J., not sitting, the other judges concur.